**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ALLIANCE RADIOLOGY, P.A., | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:20-cv-02218-KHV-GEB |
| | ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT
AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

Page

SUMMARY ................................................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 4

   A.   The Court May Consider Documents Referenced in the Second Amended Complaint..... 4

   B.   The Parties. ................................................................................................. 5

   C.   The Stay-at-Home Orders and Plaintiff's Alleged Business Losses. ................. 5

   D.   The Policy. .................................................................................................. 7

      1.   Business Income ................................................................................. 8

      2.   Duties in the Event of Loss or Damage .......................................... 9

   E.   Plaintiff's Claim and This Lawsuit. ............................................................. 10

QUESTIONS PRESENTED ...................................................................................... 11

ARGUMENT .............................................................................................................. 11

   A.   Plaintiff Is Required to Make More Than Mere Conclusory Allegations to State a Valid Claim. ........................................................................................... 11

   B.   The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses ............ 12

      1.   The Court Should Dismiss Plaintiff's Business Income and Extra Expense Claims. .. 13

         a.   Plaintiff Does Not Allege Physical Loss of or Damage to Property ......... 14

         b.   Plaintiff Does Not Allege a Period of Restoration .................................... 20

         c.   Plaintiff Does Not Allege That Property Damage Caused Its Suspension. .... 21

      2.   The Court Should Dismiss Plaintiff's Civil Authority Claim Because Plaintiff Did Not Allege Direct Physical Loss of or Damage to Another Property and the Orders Did Not Prohibit Access to Plaintiff's Premises ......................................................... 22

      3.   The Court Should Dismiss the So-Called "Sue and Labor" Claim .............. 26

   C.   Because Plaintiff Has Not Alleged a Claim Within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant. ................. 28

   D.   Continental Does Not Consent to Personal Jurisdiction of Putative Class Members that Are Not Residents of Kansas. ................................................. 29

CONCLUSION ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.,*
  308 F. Supp. 2d 331 (S.D.N.Y. 2004) ........................................................................ 24

*Advantage Homebuilding, LLC v. Md. Cas. Co.,*
  470 F.3d 1003 (10th Cir. 2006) .................................................................... 13, 29

*Am. Media, Inc. v. Home Indem. Co.,*
  658 P.2d 1015 (Kan. 1983) ........................................................................... 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007), *aff'd* 804 F.3d 1090 (10th Cir. 2015) ...................... 11

*Bristol-Myers Squibb Co. v. Superior Court of Cal.,*
  137 S. Ct. 1773 (2017) ................................................................................. 29

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,*
  861 F.3d 1081 (10th Cir. 2017) ..................................................................... 4

*Conley v. Gibson,*
  355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 80 (1957) ............................................. 12

*Cont'l Coal, Inc. v. Cunningham,*
  511 F. Supp. 2d 1065 (D. Kan. 2007) ...................................................... 4, 12

*Cruson v. Jackson Nat'l Life Ins. Co.,*
  954 F.3d 240 (5th Cir. 2020) ........................................................................ 30

*Dickie Brennan & Co. v. Lexington Ins. Co.,*
  636 F.3d 683 (5th Cir. 2011) ........................................................................ 23

*Diesel Barbershop, LLC v. State Farm Lloyds,*
  No. 5:20-CV-461-DAE (W.D. Tex. Aug. 13, 2020) .................................. 3, 16

*Exploration Place, Inc. v. Midwest Drywall Co.,*
  89 P.3d 536 (Kan. 2004) ............................................................................... 13

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.,*
  No. 20-258-CB (Mich. Cir. Ct. July 21, 2020) .............................................. 3

*Gerdes v. Am. Fam. Mut. Ins. Co.,*
  713 F. Supp. 2d 1290 (D. Kan. 2010) .................................................... 13, 28

*Goforth v. Franklin Life Ins. Co.*,
   449 P.2d 477, 202 Kan. 413 (1969) ........................................................ 12

*Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*,
   161 F. Supp. 3d 970 (D. Kan. 2016) ............................................... 13, 14

*Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*,
   181 F. App'x 465 (5th Cir. 2006) ........................................................... 3

*Helfrich v. Blue Cross & Blue Shield Ass'n*,
   36 F. Supp. 3d 1056 (D. Kan. 2014) ...................................................... 11

*Jacobsen v. Deseret Book Co.*,
   287 F.3d 936 (10th Cir. 2002) ................................................................. 4

*K.C. Hopps Ltd. v. Cincinnati Ins. Co.*,
   Case No. 20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020) .......................... 17

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of
   Hartford*, No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ................................. 24

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
   No. 17-CV-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) .............................. 19

*Marshall v. Kan. Med. Mut. Ins. Co.*,
   73 P.3d 120 (Kan. 2003) ....................................................................... 13

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
   884 N.E.2d 1130 (Ohio Ct. App. 2008) .................................................. 19

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020) ............................................................... 30

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
   115 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010) .............................................. 19

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) ....................................................... 14

*O'Bryan v. Columbia Ins. Grp.*,
   56 P.3d 789 (Kan. 2002) .................................................................. 12, 13

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
   400 F.3d 613 (8th Cir. 2005) ................................................................. 15

*Phila. Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005) ..................................................... 24

*RK Mech. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    944 F. Supp. 2d 1013 (D. Colo. 2011) ............................................................ 26, 27

*Rose's 1, LLC v. Erie Ins. Exch.*,
    No. 2020 CA 002424 B (D.C. Super. Ct. Aug. 6, 2020) ......................................... 3

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    302 A.D.2d 1 (N.Y. App. Div. 2002) ............................................................ 14, 20

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*,
    393 F.3d 1137 (10th Cir. 2004) ............................................................ 23, 25, 26

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
    No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ............................... 23

*Sauder W. Farms, Inc. v. Sentry Select Ins. Co.*,
    320 F. Supp. 3d 1214 (D. Kan. 2018) .............................................................. 12

*Ski Chalet Vill. Owners Club Inc. v. Emp'rs Mut. Cas. Co.*,
    No. 3:16-CV-20-TAV-HBG, 2016 WL 6892759 (E.D. Tenn. Nov. 22, 2016) ............... 26, 27

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ........................... 24

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020) .................................................... 2, 18

*Studio 417 v. Cincinnati Ins. Co.*,
    Case No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020) .................................. 17, 20

*Syufy Enters. v. Home Ins. Co. of Ind.*,
    No. 94–0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ....................... 25, 26

*United Air Lines, Inc. v. Ins. Co. of the State of Pa.*,
    439 F.3d 128 (2d Cir. 2006) ..................................................................... 21, 23

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
    385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ............. 20

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
    475 F. App'x 569 (6th Cir. 2012) .................................................................. 19

*Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*,
    768 F. Supp. 1463 (D. Kan. 1991) ................................................................. 12

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 4

Fed. R. Evid. 201(b) ....................................................................................................... 4

## Additional Authorities

Abate, Frank R., Ed., *Oxford American Dictionary and Language Guide*
    Oxford University Press, USA 1999........................................................................ 23

*CDC Cleaning and Disinfection for Community Facilities*,
    https://www.cdc.gov/coronavirus/2019-ncov/community/ organizations/cleaning-
    disinfection.html ................................................................................................... 19

*CDC Frequently Asked Questions, Cleaning and Disinfection*,
    https://www.cdc.gov/coronavirus/2019-ncov/faq.html ........................................... 19

*CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces,
    Businesses, Schools, and Homes*,
    https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html.................. 19

Expense, *Black's Law Dictionary* (11th ed. 2019) ..................................................... 28

Physical, *Black's Law Dictionary* (11th ed. 2019) ..................................................... 14

Russ, L.R. and Segalla T.F., *Couch on Ins. 3d,* § 148:52, 148:46 (2020)........................ 13, 15, 28

Van Doremalen, Neeltje, et al. 'Aerosol and Surface Stability of SARS-CoV-2 as
    Compared with SARS-CoV-1,' *New England Journal of Medicine* 382:16 (2020):
    1564–67, https://www.nejm.org/doi/full/10.1056/NEJMc2004973. ......................................... 19

Under the property insurance policy at issue and Kansas law, Plaintiff Alliance Radiology, P.A. can recover only if it shows that there was "direct physical loss of or damage to" property at the covered locations insured under the policy, or that a governmental order issued because of direct physical loss of or damage to other property prohibited access to the covered locations. In either instance, the physical loss of or damage to property must result from a "Covered Cause of Loss," as defined by Plaintiff's policy. Here, Plaintiff has not alleged that property at any of its covered locations suffered direct physical loss or damage, nor does Plaintiff allege that access to its covered locations was prohibited because of direct physical loss of or damage to other property. As a result, Plaintiff has failed to state a claim under the insurance policy at issue, and its claims should be dismissed.

Defendant Continental Casualty Company ("Continental") therefore respectfully moves to dismiss with prejudice all claims in Plaintiff's Second Amended Class Action Complaint ("SAC") [Dkt. 19] pursuant to Federal Rule of Civil Procedure 12(b)(6). As described in more detail below, Plaintiff's allegations fail to state a valid claim based upon the plain language of the policy under which Plaintiff seeks coverage, and the Court should dismiss the Complaint with prejudice.

## SUMMARY

This is an insurance coverage dispute arising out of the COVID-19 pandemic. Plaintiff, a professional association of radiologists, alleges that its property insurance policy with Continental provides coverage for Plaintiff's purported business income losses arising from the reduction in elective surgeries caused by COVID-19 and the associated local and state stay-at-home orders mandating social distancing and the closure of non-essential businesses. SAC ¶¶ 3–4. While Plaintiff alleges its physicians practice at multiple hospitals, the policy covers only Plaintiff's administrative office and its locations within three specific hospitals.

On April 27, 2020, Plaintiff submitted a claim for its alleged losses to Continental. *Id*. ¶¶ 26, 89. Two days later, without waiting for Continental's decision, Plaintiff filed this putative class action. In its SAC, Plaintiff alleges claims for breach of contract and seeks a declaration that Continental is obligated to provide coverage and pay Plaintiff's alleged damages under four provisions in the policy: Business Income, Extra Expense, Civil Authority, and "Sue and Labor." Plaintiff also asks that Continental be enjoined from breaching Plaintiff's policy. Although recent events have disrupted businesses around the world, including Plaintiff's radiology practice, the unambiguous policy terms do not provide coverage for Plaintiff's alleged losses for at least three reasons.

*First*, Plaintiff's claims for Business Income and Extra Expense coverage fail because the plain language of the Policy states that such coverage applies only when the suspension of Plaintiff's operations is caused by "direct physical loss of or damage to" property at the insured's premises. The Complaint does not plausibly allege direct physical loss of or damage to property at any of the four covered locations identified in the Policy, let alone that direct physical loss of or damage to property caused a suspension of Plaintiff's radiology practice. Indeed, Plaintiff concedes that none of its covered locations ever closed. Instead, Plaintiff's claims for Business Income and Extra Expense coverage are premised not on physical loss or damage but on the local hospitals' "decrees and orders" suspending elective surgeries. *Id*. ¶ 16. Nor does the mere presence of COVID-19 infected individuals in the hospitals where Plaintiff's physicians practice constitute direct physical loss of or damage to property at a covered location. As one court recently highlighted, COVID-19 damages human lungs, not property—a conclusion consistent not only with the relief Continental seeks in this motion, but with three other recent court decisions addressing similar insurance claims. Prelim. Inj, Hr'g. Tr. at 4–5, *Soc. Life Magazine,*

*Inc.* v. *Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020), attached as Ex. N; *see also* Order Granting Def. State Farm Lloyds's Mot. to Dismiss at 14, *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE (W.D. Tex. Aug. 13, 2020) (quoting *Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006)), attached as Ex. K; Order Granting Def. Erie Ins. Exchange's Mot. for Summ. J. at 5, 9, *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B (D.C. Super. Ct. Aug. 6, 2020), attached as Ex. J; Order Granting Def. Mich. Ins. Co.'s Mot. for Summ. Disposition at 3, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct. July 21, 2020), attached as Ex. H. Plaintiff's inability to allege direct physical loss or damage is fatal to Plaintiff's Business Income and Extra Expense claims.

*Second*, Plaintiff's Civil Authority claim fails because, even accepting Plaintiff's factual allegations as true, the Complaint does not plead the necessary prerequisites for coverage: (a) that an action of civil authority (*i.e.* a government agency) prohibited access to Plaintiff's covered location; (b) that the civil authority order was issued due to direct physical loss or damage to property at another location; or (c) that the civil authority order caused the loss of business income or extra expense. As Plaintiff concedes, the stay-at-home orders identified by Plaintiff did not close Plaintiff's premises and, indeed, expressly permitted health care activities like Plaintiff's to continue, and permitted the public to visit health care practitioners. Unable to allege that the orders mandated the closure of its practice or prohibited access to its premises, Plaintiff instead alleges that the stay-at-home orders prompted hospitals to stop performing elective procedures, which impacted the need for Plaintiff's radiology services. SAC ¶¶ 17–19. But neither Plaintiff, its doctors, nor the patients they serve were prevented from accessing Plaintiff's property. Nor does the Complaint allege that the civil authority orders were issued

because of any direct physical loss of or damage to property. Plaintiff's own allegations demonstrate that the stay-at-home orders did not cause the alleged loss of income.

*Third*, Plaintiff is not entitled to what it calls "Sue and Labor coverage," which is not insurance coverage at all but an obligation of the insured to mitigate covered losses. The Sue and Labor claim is contingent upon Plaintiff successfully stating a claim under the Business Income and Extra Expense or Civil Authority provisions of its Policy, which it has not done. Plaintiff's claim for so-called "Sue and Labor coverage" also fails.

Because Plaintiff does not state a viable claim against Continental based on the express language of the policy, and as no future evidence can change this conclusion, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A. <u>The Court May Consider Documents Referenced in the Second Amended Complaint.</u>

Although courts typically may not look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss, courts may "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Courts may also consider facts that are subject to judicial notice. *Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1070 (D. Kan. 2007) (citing Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")).

Continental requests that the Court consider and take judicial notice of the Continental policy, CNA Connect Policy No. B 4030660827 (the "Policy"). Plaintiff attached the Policy to the Second Amended Complaint as Exhibit A, and a copy is attached to this Motion as Exhibit A for the Court's convenience. Continental also requests that the Court consider and take judicial notice of the state and local stay-at-home orders identified in the Complaint (with internet addresses), which are attached to this Motion as Exhibits B–G.

**B.      The Parties.**

Plaintiff is a radiology practice in the Kansas City, Missouri metropolitan area employing twenty-eight physicians who read radiology studies for hospitals and freestanding imaging centers in Kansas and Missouri. SAC ¶¶ 2, 13–14. Defendant Continental is an Illinois insurance company that writes, sells, and issues insurance policies, including in Kansas.

**C.      The Stay-at-Home Orders and Plaintiff's Alleged Business Losses.**

Plaintiff alleges it suffered a loss of business income due to COVID-19 and the resulting orders issued by state and local governments related to COVID-19. *Id.* ¶¶ 4, 16–17, 19, 36. Between March 22, 2020, and April 22, 2020, Kansas Governor Laura Kelly, Missouri Governor Mike Parson, local health officers, and the mayor of Kansas City, Missouri, all issued several orders to address the public health emergency caused by COVID-19 (the "Orders"). *Id.* ¶¶ 37– 42. The Orders, among other things, closed nonessential workplaces and limited large gatherings. *Id.* ¶¶ 37–42, 44. Each of the orders, however, permitted the continued operation of certain essential businesses, including health care operations, and allowed the public to visit health care professionals. *Id.*

Specifically, Plaintiff's SAC relies upon the following Orders:

- Effective March 24, 2020, Johnson County, Kansas, issued a stay-at-home order "to mitigate the spread of the Coronavirus (COVID-19) epidemic in Johnson

County, Kansas." Ex. B at 1; SAC ¶ 37. The order directed individuals "to stay at home and leave their residence only to perform . . . 'Essential Activities'" such as "visiting a health care professional" or "work[ing] for or obtain[ing] services" at any hospital, clinic, or other healthcare facility. Ex. B at 2–3.

- Effective March 30, 2020, Kansas issued an executive order establishing a statewide "stay home" order directing individuals within the state "to stay in their homes or residences unless performing an essential activity" such as seeking medical care or working at a business that provides medical care and services. Ex. C at 1–2, 6; SAC ¶ 38. On April 16, Kansas extended this order to May 3. SAC ¶ 38.

- Effective March 21, 2020, the City of Kansas City, Missouri, issued an order prohibiting individuals from leaving their residences except to perform "Essential Activities" such as "visiting a health care professional" or to perform work at an "Essential Business," including healthcare operations. Ex. D at 1–3; SAC ¶ 39. On April 16, Kansas City extended its order to May 15. SAC ¶ 39.

- Effective March 24, 2020, Clay County, Missouri, issued an order prohibiting individuals from leaving their residences except to perform "Essential Activities" such as "visiting a health care professional" or to perform work at an "Essential Business," including healthcare operations. Ex. E at 1–3; SAC ¶ 40. On April 22, Clay County extended the order to May 3. SAC ¶ 40.

- Effective April 16, 2020, Jackson County, Missouri, issued a stay-at-home order requiring individuals "to stay at home at their place of residence" unless leaving for "Essential Activities" such as "visiting a health care professional" or to "work for . . . or obtain services at 'Healthcare Operations,' including . . . hospitals, clinics . . . or other healthcare facilities." Ex. F at 1–2, 4–6; SAC ¶ 41.

- Effective April 6, 2020, the Missouri Governor and Department of Health and Senior Services Director issued an order directing individuals to "avoid leaving their homes or places of residence" except to, among other things, leave to "access . . . health care." Ex. G at 1; SAC ¶ 42. On April 16, 2020, Missouri extended its order though May 3, 2020. SAC ¶ 42.

Plaintiff alleges that subsequent to these Orders, "the hospitals at which Plaintiff's physicians work, following local, state and federal recommendations, issued decrees or orders suspending all elective medical procedures." SAC ¶ 16. Plaintiff further alleges that COVID-19 and the resulting response by state and local governments and hospitals caused physical loss of Plaintiff's property and interrupted its business by forcing it to limit or suspend elective radiological services. *Id.* ¶¶ 4, 69, 75. Plaintiff contends that access to its property was restricted

"due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders." *Id.* ¶ 72.

**D.** **The Policy.**

The Policy provides coverage for the period of July 27, 2019, through July 27, 2020. SAC ¶ 20; Policy, Ex. A at 8.[1] The Policy's Schedule of Locations identifies four covered locations: Plaintiff's administrative office in Overland Park, Kansas, and its location in three hospitals—Shawnee Mission Hospital (Shawnee Mission, KS), Liberty Hospital (Prairie Home, MO), and St. Joseph Medical Center (Kansas City, MO). Policy, Ex. A. at 10–12; SAC ¶¶ 2, 36.

The Policy provides both property and liability coverage. Plaintiff's Complaint is based upon the property coverage, which is set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1) and its incorporated Declarations, Endorsements, and Exclusions. SAC ¶¶ 20–22. Specifically, Plaintiff alleges that the Policy includes four grants of "coverage" that entitle Plaintiff to recover its alleged business losses: Business Income, Extra Expense, Civil Authority, and Sue and Labor. *Id.* ¶¶ 22–23.

Business Income coverage, as set forth in the Business Income and Extra Expense Endorsement, allows Plaintiff to recover lost business income caused by the necessary suspension of Plaintiff's operations resulting from a "direct physical loss of or damage to property" at the described premises:

> Business Income and Extra Expense is provided at the premises described in the Declarations when the Declarations show that you have coverage for Business Income and Extra Expense.

---

[1] For ease of reference, page numbers have been added to the upper right-hand corner of the Policy. Using those page numbers, the motion will refer to the Policy by the form "Policy, Ex. A at xx."

1.     **Business Income**

　　　. . . .

**b**.  We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy, Ex. A at 42. "[S]uspension" means the "partial or complete cessation of your [the insured's] business activities." *Id.* at 39. "[O]perations" means "the type of your business activities occurring at the described premises and tenantability of the described premises" *Id.* at 37. Additionally, the Business Income coverage provides that if the insured rents, leases, or occupies only part of the site where its premises are located (the four covered locations identified in the Policy), then the described premises means only that portion that the insured rents, leases, or occupies, and any area at the site used to gain access to the described premises. *Id.* at 42.

Extra Expense coverage allows an insured to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss:

**a.**     Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

**b.**     We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)**     Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or

**(2)**     Minimize the "suspension" of business if you cannot continue "operations."

*Id*. at 43. For purposes of Plaintiff's claim, the "period of restoration":

> [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and . . . [e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location.

*Id*. at 37. "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless excluded or limited by the Policy. *Id.* at 21–22.

Civil Authority coverage allows recovery of lost Business Income and Extra Expense when a civil authority—*i.e.*, a government entity—prohibits access to an insured's property because of "direct physical loss of or damage to" property at locations *other than* the described premises:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id*. at 68. For example, Civil Authority coverage would apply if a government entity prohibited access to an insured's covered property because a fire damaged the building next door.

Finally, the so-called "Sue and Labor" provision that Plaintiff characterizes as a grant of "coverage" is, in actuality, part of the Property Loss Conditions section that imposes duties on the <u>insured</u> in the event of a Covered Cause of Loss:

> **2.**      **Duties in the Event of Loss or Damage**
>
> a.  You [the insured] must see that the following are done in the event of loss or damage to Covered Property:
>
>           . . . .

       (4)   Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. . . . However, we will not pay for any loss or damage from a cause of loss that is not a Covered Cause of Loss.

*Id*. at 28.

**E.**      **<u>Plaintiff's Claim and This Lawsuit.</u>**

On April 27, 2020, Plaintiff submitted a notice of claim to Continental based on an alleged loss of business income related to COVID-19 that sought coverage under each of the provisions identified above. SAC ¶ 26. On April 28, Plaintiff provided additional information about its claims to Continental, in both a telephone call with Plaintiff's counsel and by email. *See id.*

On April 29, 2020, two days after submitting its notice of claim, Plaintiff filed this lawsuit against Continental and an affiliate, seeking to establish a putative nationwide class action on behalf of all Continental policyholders, without regard for the policy form, type of business, or geographic location. *Id.* ¶ 77. Plaintiff filed its first amended complaint on May 15, dropping claims against the affiliate and slightly amending its claims against Continental. First Am. Class Action Compl. and Demand for Jury Trial [Dkt. 4]. On June 22, 2020, following Continental's investigation of the claim, Continental notified Plaintiff that the Policy does not provide coverage for Plaintiff's claim. On July 31, Plaintiff filed the SAC to add breach of contract claims based on Continental's denial.

The SAC alleges claims for breach of contract and declaratory judgment, arguing that Continental is obligated to provide coverage and pay Plaintiff's alleged damages under the four coverage grants discussed above. SAC ¶¶ 87–138. Plaintiff also seeks injunctive relief enjoining Continental from continuing to engage in conduct related to the alleged breach of the Policy. *Id.*

Although Plaintiff alleges its practice includes twenty-eight physicians who read radiology studies for "approximately twenty hospitals as well as several freestanding imaging centers," and identifies a number of hospitals around the Kansas City area, only four of these locations are covered by the Policy: (1) 8000 W. 110th St., Ste. 150, Overland Park, KS 66210 (administrative office); (2) 9100 W. 74th St., Shawnee Mission, KS 66204 (Shawnee Mission Hospital); (3) 2525 Glen Hendren, Prairie Home, MO 65068 (Liberty Hospital); and (4) 1000 Carondelet, Kansas City, MO 64114 (St. Joseph Medical Center). *Id.* ¶¶ 2, 13–14, 36; Policy, Ex. A at 10–12. Even for those four locations, Plaintiff does not allege that "[t]he portion of the building" that Plaintiff rents, leases, or occupies (*i.e.* the Covered Location) has been infected. *See* SAC ¶ 18; Policy, Ex. A at 42.

## QUESTIONS PRESENTED

1.  Whether Plaintiff alleges facts sufficient to state a claim under the Policy's Business Income and Extra Expense provision by showing that COVID-19 caused "direct physical loss of or damage to" property at the four covered locations and that the damage caused a suspension of Plaintiff's operations?

2.  Whether Plaintiff alleges facts sufficient to state a claim under the Policy's Civil Authority provision by showing that an action of civil authority due to "direct physical loss of or damage" to property at another location prohibited access to any of Plaintiff's four covered locations, causing Plaintiff to suffer lost business income or extra expense?

3.  Whether Plaintiff alleges facts sufficient to state a claim for recovery under the Policy's so-called Sue and Labor Provision by successfully stating a claim under the Business Income and Extra Expense or Civil Authority provisions?

## ARGUMENT

**A.** **Plaintiff Is Required to Make More Than Mere Conclusory Allegations to State a Valid Claim.**

Complaints must allege facts sufficient to "state a claim to relief that is plausible on its face." *Helfrich v. Blue Cross & Blue Shield Ass'n*, 36 F. Supp. 3d 1056, 1059 (D. Kan. 2014) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)), *aff'd*, 804 F.3d 1090 (10th Cir.

2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). When the allegations of a complaint are fatally flawed, such that a plaintiff's legal theory will necessarily fail despite any future evidence a plaintiff might present, the complaint must be dismissed. *See Cont'l Coal, Inc.*, 511 F. Supp. 2d at 1070 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

For purposes of this motion, Continental treats as true the well-pleaded allegations of the Complaint and the facts in documents incorporated by reference or integral to Plaintiff's claims. Even taking Plaintiff's factual and non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the Court should dismiss the SAC in its entirety, with prejudice.

**B.      The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses.**

In this diversity case, Kansas substantive law applies. *See Sauder W. Farms, Inc. v. Sentry Select Ins. Co.*, 320 F. Supp. 3d 1214, 1219 (D. Kan. 2018) ("Under Kansas law, insurance contracts are governed by the law of the state where the contract was made."). Under Kansas law, insurance policies are construed "like any other contract." *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F. Supp. 1463, 1467 (D. Kan. 1991). The interpretation and legal effect of an insurance contract is a matter of law to be determined by the court. *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983). "If the facts are admitted, . . . then it is for the court to decide whether they come within the terms of the policy." *Id.* (quoting *Goforth v. Franklin Life Ins. Co.*, 449 P.2d 477, 481 (Kan. 1969)).

In construing an insurance policy, a court should consider the instrument as a whole and interpret the policy language to give effect to the intent of the parties. *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002). "If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense." *Id.* In such a case,

"there is no need for judicial interpretation or the application of rules of liberal construction." *Id.*; *see also Gerdes v. Am. Fam. Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1296 (D. Kan. 2010). "An ambiguity does not exist merely because the parties disagree on the interpretation of the language." *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003). Further, "[a] court should not strain to find ambiguity where none exists." *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 976 (D. Kan. 2016).

It is the insured's burden to show that it has suffered a loss that falls within its policy's general coverage provisions. *See Gerdes*, 713 F. Supp. 2d at 1296 (citing *Exploration Place, Inc. v. Midwest Drywall Co.*, 89 P.3d 536, 541 (Kan. 2004)); *see also* 10A *Couch on Ins.* § 148:52 (3d ed. 2020). *HERE* Accordingly, a complaint alleging breach of an insurance agreement or seeking a declaration that an insurance agreement provides the asserted coverage must allege facts sufficient to show that the claims fall within the policy's coverage. And when, as here, the insured cannot meet this burden, the Court must dismiss the complaint. *See Advantage Homebuilding, LLC v. Md. Cas. Co.*, 470 F.3d 1003, 1008 (10th Cir. 2006).

## 1. The Court Should Dismiss Plaintiff's Business Income and Extra Expense Claims.

Plaintiff does not assert a claim that falls within the Policy's coverage under the Business Income and Extra Expense Endorsement. The plain language of the Policy provides that Continental will pay for lost business income sustained only as a result of the necessary "suspension" of operations "caused by direct *physical* loss of or damage to property at the [insured] premises." Policy, Ex. A at 42–43 (emphasis added). Because the Complaint does not plausibly allege that property at the described premises suffered any direct physical loss or damage, no coverage is available.

### a.     <u>Plaintiff Does Not Allege Physical Loss of or Damage to Property</u>.

The Policy expressly and unambiguously provides that business income and extra expense losses are covered *only* if those losses result from *physical* loss or damage. The plain, ordinary meaning of the word "physical," is that the loss or damage at issue must be "tangible" or "material." *See*, *e.g.* Physical, *Black's Law Dictionary* (11th ed. 2019) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). This Court has held that under Kansas law, when an insurance policy requires "physical loss or damage," the insured must show a "physical alteration" to the insured's property. *Great Plains Ventures, Inc.*, 161 F. Supp. 3d at 978 (noting that "the phrase 'physical damage' in an insurance policy is widely accepted to mean a 'physical alteration'" and finding coverage based on the "physical alter[ation] [of the] insured's property").

This Court's precedent is in line with the decisions of courts across the country which have consistently concluded that the language in the Policy—direct physical loss of or damage to property—"unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (emphasizing that the language "direct physical loss or damage" should not "be read . . . to extend to mere loss of use of a premises, where there has been no physical damage to such premises"); *see also Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. App. Div. 2002) (concluding that policy insuring against business interruption losses as a "direct and sole result of loss of, damage to or destruction of property or facilities" "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage"). As a leading treatise on insurance law explains, the "requirement that the loss be

'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied *by a distinct, demonstrable, physical alteration of the property*." 10A *Couch on Ins.* § 148:46 (3d ed. 2020) (emphasis added). To hold otherwise would mean that direct physical loss or damage is established any time an insured cannot fully utilize an insured property for every possible intended purpose, rendering the language superfluous. *See Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) ("Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss. But [the insured's] argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose.").

This requirement of tangible, physical damage to trigger coverage was recently confirmed by three courts, which rejected business interruption claims similar to Plaintiff's claim here. In *Gavrilides Management. Co. v. Michigan Insurance. Co.*, a Michigan court dismissed the plaintiff's business interruption claim for alleged losses caused by the COVID-19 pandemic for failure to allege direct physical loss of or damage to its property. Ex. H, *Gavrilides* Order at 3. The *Gavrilides* plaintiff's claim was premised on state orders that purportedly restricted activities at plaintiff's restaurant and caused plaintiff to reduce its operations. The court summarily rejected plaintiff's argument that it experienced a "physical loss" of property because customers were prohibited from dining in at its restaurant, which remained open for take-out and delivery service. Tr. of Oral Argument on Mot. for Summ. Disposition ("*Gavrilides* Tr.") at 20, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30, (Mich. Cir. Ct. July 1, 2020),

attached as Ex. I. Calling the argument "nonsense," the court concluded that plaintiff's allegations came "nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage. *Id.*

A District of Columbia court subsequently adopted a similar position in *Rose's 1, LLC v. Erie Ins. Exchange*, concluding that "a natural reading of the term 'direct physical loss'" requires that any claimed loss be caused by "a direct physical intrusion on to the insured property" and result in "some form of direct physical change." Ex. J, *Rose's 1* Order at 5, 9. Because the plaintiffs in *Rose's 1* failed to show that "COVID-19 was actually present on their insured properties at the time they were forced to close" or that the relevant D.C. orders had "any effect on the material or tangible structure of the insured properties," the court dismissed plaintiffs' claims. *Id.* at 5, 10.

Yesterday, a court in the Western District of Texas further substantiated this conclusion, holding that a policy requiring "direct physical loss to Covered Property" demands a "distinct, demonstrable physical alteration of the property." Ex. K, *Diesel Barbershop* Order at 14. In considering the barbershop plaintiffs' claims for income loss resulting from state and local orders prompted by COVID-19, the court acknowledged that some courts have found direct physical loss despite lack of physical damage, but found that "the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable." *Id.* at 13–14 (noting, for example, that "COVID-19 does not produce a noxious odor that makes a business uninhabitable"). Holding that the loss needs to have been a "distinct, demonstrable physical alteration of the property," the court concluded that the plaintiffs failed to plead a direct physical

loss and dismissed the case. *Id.* at 14–15.[2]

Plaintiff makes the cursory allegation that "[t]he *hospitals* in which Plaintiff's physicians practice medicine have been infected with COVID-19" because "[p]atients, employees, and/or other visitors to the insured property . . . were infected with the coronavirus and thereby infected the insured property with coronavirus." SAC ¶ 18 (emphasis added). Thus, according to Plaintiff, property at its covered locations suffered a "physical loss" as a result of these infections. *Id.* ¶¶ 4, 18. The mere presence, however, of COVID-positive patients in the hospitals out of which Plaintiff operates does not constitute "direct physical loss of or damage to property" at Plaintiff's covered locations. Tellingly, Plaintiff's Complaint does not specifically allege that COVID-19 was present at any of the four covered locations under the Policy, or whether "[t]he portion of the

---

[2] The weight of decisions so far hold that COVID-19 does not cause physical loss of or damage to property. Only one judge to date has concluded—in two concurrent cases against the same insurer—that COVID-19 could plausibly cause physical loss sufficient to trigger business interruption coverage. *See* Order Denying Def. Cincinnati Ins. Co.'s Mot. to Dismiss, *Studio 417 v. Cincinnati Ins. Co.*, Case No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020), ECF No. 40, attached as Ex. L; Order Denying Def. Cincinnati Ins. Co.'s Mot. to Dismiss, *K.C. Hopps Ltd. v. Cincinnati Ins. Co.*, Case No. 20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020), ECF No. 29, attached as Ex. M. The court's reasoning in *Studio 417* is inapplicable here; indeed, the factual distinctions that were the basis of the *Studio 417* opinion demonstrate that dismissal is the appropriate outcome in this case. The *Studio 417* court denied a motion to dismiss a suit by a group of hair salons and restaurants alleging that governmental orders arising out of the pandemic prohibited access to their property. The court reasoned that plaintiffs' allegations that the presence of the virus rendered their physical properties "unsafe and unusable" were sufficient to plausibly allege a "direct physical loss," at least at the motion to dismiss stage. Ex. L, *Studio 417* Order at 8,  12; *see also* Ex. M, *K.C. Hopps* Order at 1–2 (denying motion to dismiss on same grounds with no further discussion). Even if this Court decided to apply that loosened standard, Plaintiff here does not, and cannot, allege that its premises ever became "unusable" because the hospitals continued to operate. SAC ¶¶ 44, 75. Plaintiff alleges that its revenue loss occurred not because of the physical condition of the property but because the hospitals performed fewer procedures requiring radiology scans. *Id.* ¶¶ 4, 16–17. Plaintiff's allegations here suffer from the same defects as in *Gavrilides*, *Rose's 1*,  and *Diesel Barbershop*. The cancellation of procedures and resulting limitation on Plaintiff's operations are not physical alteration to or tangible, physical damage to the integrity of Plaintiff's property, as required by the Policy.

building" Plaintiff rents, leases, or occupies has been affected. *Compare id.* ¶ 18, *with* Policy,

Ex. A at 42 (requiring direct physical loss of or damage to the "portion of the building you rent,

lease or occupy" if you "occupy only part of the site at which the described premises are

located"). Nor does the Complaint allege COVID-19 infection among Plaintiff's physicians,

staff, or patients at its imaging centers.

Even if (contrary to the allegations of the Complaint) the coronavirus had been present on

Plaintiff's premises, Plaintiff's allegations would still be insufficient to plead and prove physical

loss or damage. Indeed, as previously discussed, at least four courts have already concluded that

COVID-19 does not constitute physical loss or damage, with one finding that COVID-19

"damages lungs," not "property." *See* Ex. N, *Soc. Life Magazine, Inc.* Tr. at 4–5 (denying

preliminary injunction and indicating insured could not establish coverage because even if the

virus was present, "[t]here is no damage to your property. . . . [COVID-19] damages lungs. It

doesn't damage printing presses"); *see also id.* at 6 (dismissing argument that a virus damages

"whatever" it lands on because when the virus "lands on something and you touch it, you could

die from it," stating: "That damages you. It doesn't damage the property"); Ex. I, *Gavrilides* Tr.

at 18–23 (dismissing business loss claims based on COVID-19 because such claims do not, and

cannot, satisfy the physical loss of or damage to property requirement necessary to trigger

coverage).

Moreover, according to CDC guidelines, "[c]oronaviruses on surfaces and objects

naturally die within hours to days" and can be removed with "[n]ormal routine cleaning with

soap and water" or killed with disinfectants. *See CDC Reopening Guidance for Cleaning and

Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/

2019-ncov/community/reopen-guidance.html (last visited Aug. 13, 2020).[3] The fleeting presence

of a virus that can survive on surfaces for only a few hours or days, and can be easily removed

through ordinary cleaning or disinfectants, is not physical loss of or damage to property. *See*

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D.

Fla. June 11, 2018) ("The fact that the [premises] needed to be cleaned more frequently does not

mean Plaintiff suffered a direct physical loss or damage."); *MRI Healthcare Ctr. of Glendale,*

*Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37–38 (Cal. Ct. App. 2010) ("A direct

physical loss contemplates an actual change in insured property then in a satisfactory state,

occasioned by accident or other fortuitous event directly upon the property causing it to become

unsatisfactory for future use or requiring that repairs be made to make it so." (citation and

internal quotation marks omitted)); *Mastellone* v. *Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130,

1144–45 (Ohio Ct. App. 2008) (holding mold contamination that did not cause structural damage

and could be remediated through standard cleaning procedures was not "physical damage" or

"direct physical injury"); *see also Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x

569, 573 (6th Cir. 2012) (cleaning expenses "are not tangible, physical losses, but economic

losses"). But, even if the fleeting presence of COVID-19 could result in "physical loss" sufficient

---

[3] A study in the *New England Journal of Medicine* found the coronavirus that causes COVID-19 could survive on surfaces for four to 72 hours, depending on the surface material. *See Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, N. Engl. J. Med. 382:1564–67 (2020), https://www.nejm.org/doi/full/10.1056/NEJMc2004973. According to CDC guidance, "[c]ompanies do not necessarily need to close after a person with confirmed or suspected COVID-19 has been in a company facility. . . .Once the area has been appropriately disinfected, it can be opened for use." *CDC Frequently Asked Questions, Cleaning and Disinfection*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html #Cleaning-and-Disinfection (last visited August 13, 2020); *see CDC Cleaning and Disinfection for Community Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/ organizations/cleaning-disinfection.html (last visited August 13, 2020) (noting EPA-registered household disinfectants such as bleach, Lysol®, and hydrogen peroxide are effective to kill the coronavirus).

to trigger Plaintiff's insurance coverage, Plaintiff has not alleged any such loss here because, unlike in *Studio 417*, Plaintiff has not alleged that at any time its property became "unusable," resulting in a "physical loss of" its property. Ex. L, *Studio 417* Order Denying Mot. to Dismiss, at 8, 11.

Plaintiff does not—and cannot—allege facts sufficient to show it has suffered "direct *physical* loss of or damage to property at the described premises." Policy, Ex. A at 42 (emphasis added). Its claims for coverage under the Business Income and Extra Expense Endorsement should be denied.

b.      <u>**Plaintiff Does Not Allege a Period of Restoration.**</u>

That the Policy requires tangible physical loss or damage to trigger coverage finds further support in the fact that the Policy allows recovery of lost business income and extra expense only for the "period of restoration." Policy, Ex. A at 42–43. The period of restoration "[b]egins with the *date of direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." *Id.* at 37 (emphasis added). The Policy's restriction of coverage to the period for repair, rebuilding, or replacement of property "support[s] the requirement of physical damage" to trigger coverage and demonstrates that, without that direct physical loss or damage trigger, there is no coverage. *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005) (determining policy language limiting coverage to "the length of time [needed] to rebuild, repair or replace such part of the Insured Location(s) as has been damaged or destroyed" supports a "requirement of physical damage" (alteration in original)), *aff'd* 439 F.3d 128 (2d Cir. 2006); *see also Roundabout Theatre Co.*, 302 A.D.2d at 1, 7–9 (concluding "rebuild, repair, or replace"

supported the conclusion that coverage "is limited to instances where the insured's property suffered direct physical damage" and denying coverage based on the same).

Plaintiff does not allege any physical loss or damage to its premises requiring repair, rebuilding, or replacement. Aside from using the phrase once in the SAC, Plaintiff does not even plead a "period of restoration" or what repairs were necessitated by any supposed property damage. *See* SAC ¶ 71.

### c.   **Plaintiff Does Not Allege That Property Damage Caused Its Suspension of Operations.**

Even if Plaintiff's complaint could be construed as alleging physical damage to property, it does not satisfy the additional requirement that the suspension of Plaintiff's operations was caused by that damage, which is also fatal to Plaintiff's claims. *See United Air Lines, Inc. v. Ins. Co. of the State of Pa.*, 439 F.3d 128 (2d Cir. 2006). Plaintiff does not allege it closed any of the four covered locations or that any of its radiologists were limited in their ability to review radiological studies because of any physical loss or damage to property on Plaintiff's premises. To the contrary, Plaintiff alleges its business income loss occurred because the hospitals where its physicians work "issued decrees or orders suspending all elective medical procedures," which limited the number of radiological studies available for its radiologists to review. SAC ¶¶ 16–17, 75 (alleging lost revenue and business opportunities because Plaintiff "has been unable to provide elective radiological services"). In fact, Plaintiff admits the hospitals' restrictions on elective procedures were implemented "to conserve valuable medical resources . . . and to reduce patients' and medical professionals' exposure to the virus," not because of physical loss of or damage to the property. *Id.* ¶ 44. Plaintiff also acknowledges that its physicians and the hospitals it services continued to utilize the premises and provide services for essential procedures. *Id.* ¶¶ 44, 75.

Plaintiff's claim for "lost revenue and business opportunities" is premised entirely on the fact Plaintiff "has been unable to provide elective radiological services" as a result of the hospital directives, not because of any property damage. *Id*. ¶ 75. Plaintiff's claims under the Business Income and Extra Expense Endorsement should therefore be dismissed.

> **2.** **The Court Should Dismiss Plaintiff's Civil Authority Claim Because Plaintiff Did Not Allege Direct Physical Loss of or Damage to Another Property and the Orders Did Not Prohibit Access to Plaintiff's Premises.**

Plaintiff also cannot recover under the Civil Authority Endorsement of the Policy because the orders were not issued due to direct physical loss of or damage to property other than Plaintiff's premises and did not prohibit access to Plaintiff's premises. Policy, Ex. A at 68 (allowing recovery for lost business income "caused by action of civil authority that prohibits access to the described premises" only when that civil authority action is "due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss"). Accordingly, Plaintiff's allegations are insufficient to state a claim for coverage under the Policy's Civil Authority Endorsement for at least three reasons.

*First*, as a threshold matter, Plaintiff does not allege facts demonstrating that any of the Orders were "due to direct physical loss of or damage to property" at locations other than Plaintiff's insured premises. Policy, Ex. A at 68. Instead, Plaintiff makes only a conclusory allegation that access to its premises was "restricted . . . due to the presence and threat of COVID-19 in the immediate surrounding areas." SAC ¶ 72. As explained above, an allegation of the presence or threat of COVID-19 does not constitute "physical loss of or damage to property." Even if the presence of virus were considered damage to property, Plaintiff does not allege that the Orders were issued because of any property damage. Tellingly, none of the Orders identify any specific property loss or damage. Instead, each declares that it is being issued to mitigate the spread of COVID-19, reduce exposure, and/or protect the health and safety of the public as a

result of a nationwide and global pandemic.[4] *See generally* Exs. B–G. To the extent the Orders were intended to prevent *future* property damage—rather than to address prior property damage—they are insufficient to give rise to a civil authority claim. *See United Air Lines, Inc.*, 439 F.3d at 134–35 (finding no civil authority coverage when order was "based on fears of future attacks," not prior physical damage); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (requiring "proof of a causal link between prior damage and civil authority action"); *S. Tex. Med. Clinics, P.A.* v. *CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at \*10 (S.D. Tex. Feb. 15, 2008) ("When . . . the only relevance of prior damage to other property in deciding whether to issue a civil authority order . . . is to provide a basis for fearing future damage . . . the causal link between the prior damage and the civil authority order is missing."). Consequently, Plaintiff has also failed to allege facts sufficient to show that any of the Orders were due to any direct physical loss of or damage to property at locations other than Plaintiff's insured premises.

*Second*, for a civil authority claim to succeed, access to the covered premises must be "prohibit[ed]," which unambiguously means a complete bar to entry. Policy, Ex. A at 68; *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (defining "prohibit" to mean "formally forbid, esp. by authority" or "prevent" (quoting *Oxford American Dictionary and Language Guide* 795 (1999)) and citing cases from various states). Here, none of the actual governmental Orders referenced by Plaintiff ***prohibits*** access or completely bars entry to Plaintiff's insured premises, which Plaintiff does not dispute. SAC ¶¶ 3, 36–42, 44, 72. In fact,

---

[4] Although some of the Orders state that the COVID-19 conditions endanger the health, safety, and welfare of persons and property, they do not refer to any property damage caused—or threatened—by COVID-19. *See* SAC ¶ 59; Exs. B–G. Even if they did, any such reference would not change the scientific fact that the virus does not cause physical property damage and, according to the CDC, can be easily cleaned off surfaces. *See supra* pp. 18–19.

Plaintiff explicitly concedes that the Orders "permit individuals to seek medical care," *id.* ¶ 44, and Plaintiff does not allege anyone was ever barred from accessing its premises.

Instead, Plaintiff alleges that access to its premises has been "restricted" because the hospitals, after receiving the Orders referenced by Plaintiff, issued their own "orders" to stop performing elective procedures. *Id.* ¶¶ 16, 72. But a mere hindrance on or discouragement of access does not trigger Civil Authority coverage. *See, e.g.*, *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *1, *4–5 (M.D. Pa. July 6, 2010) (finding no civil authority coverage when order closed road to ski resort utilized by approximately 70 percent of resort's patrons because "at least some" of the patrons were able to access the resort). Each of the Orders referenced by Plaintiff permitted the public to visit health care providers, and Plaintiff has not identified any order that blocked access to Plaintiff's business locations. To the contrary, Plaintiff's locations remained open. Plaintiff's Civil Authority claim fails for this reason alone. *See Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories recommending that residents remain home after hurricane despite no orders forbidding or blocking access to premises); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (denying civil authority coverage to airport parking facility when FAA order grounded all airplanes because the order "did not 'prohibit[] access to' [the insured's] garages" even though it "temporarily obviated the need for" its services); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 333–36 (S.D.N.Y. 2004) (finding civil authority provision was applicable only to the four days *access to the insured's premises was completely prohibited* by order, despite traffic restrictions in the area after the no-access order was lifted).

*Third*, Plaintiff does not allege a direct link between its alleged business losses and the civil authority Orders. In fact, Plaintiff's claims are not based on civil authority Orders at all, but instead are based on *the hospitals*' "orders and decrees suspending all elective medical procedures," resulting in a purported loss of revenue to Plaintiff. *See* SAC ¶¶ 16–17. Courts interpreting nearly identical civil authority provisions in other policies have held that the language "caused by action of civil authority" requires "a ***direct nexus*** between the civil authority order and the suspension of the insured's business." *S. Hosp., Inc.*, 393 F.3d at 1141 (emphasis added) (denying civil authority coverage to a hotel "because the FAA's order grounding flights did not itself prevent, bar, or hinder access" to the insured hotels); *see also Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94–0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (denying civil authority coverage when insured opted to close its theaters due to city-wide curfews because theater access was never specifically foreclosed by the order). Thus, Plaintiff's Civil Authority claim, as alleged, does not even arise out of an action by a civil authority but by the conduct of private entities.

In *Syufy Enterprises*, for example, the court denied a movie theater's business interruption claim after the movie theater suspended its business operations in response to civil orders in several large cities imposing dawn-to-dusk curfews to quell potential rioting and looting. 1995 WL 129229, at *2–3. There, the policy in question covered business income loss where "as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority." *Id.* at *1. The court denied coverage under the civil authority provision for two reasons: (1) no order ever "*specifically* prohibited any individual from entering a theater," and (2) the plain language of the policy required that the civil authority

order be "a *direct result* of damage to or destruction of property adjacent" to the insured's property, not a curfew imposed to *prevent future* rioting and property damage. *Id.* at *2 (emphases in original).

Here, the SAC fails to establish the requisite nexus between the Orders and Plaintiff's lost business income. Plaintiff plainly alleges that it was the hospitals' suspensions of elective procedures that caused the alleged "devastating effect on Plaintiff's business." SAC ¶¶ 16–17. But because these suspensions were not required under the Orders, Plaintiff cannot allege that the Orders *directly* "caused" Plaintiff's lost business income. *S. Hosp., Inc.*, 393 F.3d at 1141. Instead, like in *Syufy*, Plaintiff's self-imposed suspension (or the acts of the hospitals for which it performed procedures) does not qualify for coverage under the Civil Authority Endorsement.

Because Plaintiff does not allege facts sufficient to show that the Orders (1) prohibited access to Plaintiff's premises; (2) were issued due to the direct physical loss of or damage to property at locations other than its premises; or (3) are directly linked to the hospitals' decisions to eliminate elective medical procedures, Plaintiff has failed to state a claim for relief under the Policy's Civil Authority coverage. SAC ¶ 72; Policy, Ex. A at 68.

### 3. <u>The Court Should Dismiss the So-Called "Sue and Labor" Claim</u>.

For an insured to recover mitigation expenses, "the law is clear that costs must relate to a *covered cause of loss*." *RK Mech. Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp. 2d 1013, 1027 (D. Colo. 2011) (emphasis in original). Unless the insured's property suffers damage from a covered cause of loss, the insured is under no obligation to the insurer to minimize or prevent further loss, and the insurer is not obligated to repay the insured for its expenses incurred in protecting its property. *See Ski Chalet Vill. Owners Club Inc. v. Emp'rs Mut. Cas. Co.*, No. 3:16-CV-20-TAV-HBG, 2016 WL 6892759, at *4 (E.D. Tenn. Nov. 22, 2016) (finding that mitigation provision did "not independently create coverage for damage" to swimming pool excluded under

policy, "but rather that it is a condition precedent to obtaining coverage in situations otherwise covered by the insurance policy"). The Policy makes this predicate crystal clear: it defines what the insured must do "in the event of loss or damage to Covered Property," and instructs the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage," and recover its associated expenses, provided that the loss or damage is from "a Covered Cause of Loss." Policy, Ex. A at 28.

As set forth above, the Policy does not cover Plaintiff's alleged losses. *See supra* Parts B.1–B.2. Thus, Plaintiff is under no contractual obligation under the Policy to minimize a covered loss, and Continental is under no obligation to repay any mitigation expenses incurred. *See RK Mech.*, 944 F. Supp. 2d at 1025 ("[A]n insured's ability to recover mitigation costs under a sue and labor [clause] is tied to the insurer's obligations under the general insuring provisions of the policy."); *see also Ski Chalet Vill. Owners Club Inc.*, 2016 WL 6892759, at *4 (concluding that a mitigation provision creating coverage "would permit the insured to acquire coverage for covered property, regardless of the cause of loss, merely by taking and documenting steps to protect the property," which "would render the exclusionary cause provisions of the insurance contract meaningless, and substantially inhibit the objectives of the insurance contract as a whole").

Further, Plaintiff's allegations with respect to the purported steps it took to mitigate its losses and the expenses it incurred are plainly insufficient. The SAC alleges in conclusory fashion that Plaintiff "has taken such [mitigation] steps" by complying with the Orders, but the only "step" it mentions is an uninformative reference to "complying with the Stay-at-Home Orders." SAC ¶ 74. Plaintiff also does not allege what actions it took or what expenses it

incurred. *See id.* Even if lost revenue were an "expense"—which it is not[5]—Plaintiff does not

explain how "complying with the Stay-at-Home Orders" prevented or mitigated further damage

to its premises. *See id.* Accordingly, the Court should dismiss Plaintiff's "Sue and Labor" count

for failure to state a claim.

C.     **Because Plaintiff Has Not Alleged a Claim Within the Policy's Grant of Coverage,**
       **the Purported Absence of a Virus Exclusion Is Irrelevant.**

      The SAC alleges that Plaintiff is entitled to coverage under the Policy because it is an

"'all-risk' policy [that] covers 'direct 'loss' unless the 'loss' is excluded or limited,'" and the

Policy "does not exclude or limit coverage for losses from viruses or communicable diseases like

COVID-19" or "contain a pandemic-exclusion clause." SAC ¶¶ 64–65. But Plaintiff has it

backwards: it is the insured's burden to show that the alleged loss falls within the policy's grant

of coverage before exclusions even become relevant. *See Gerdes*, 713 F. Supp. 2d at 1296–97;

*see also* 10A *Couch on Ins.* § 148:52 (3d ed. 2020).  Plaintiff cannot carry that burden here

because, as shown above, the trigger for coverage is "direct physical loss of or damage to" the

insured's premises (for the Business Income and Extra Expense coverage) or other premises (for

Civil Authority coverage). *See*, *supra*, Parts B.1–B.2.  The insured must meet these threshold

requirements to trigger coverage before there is any need to inquire whether there is an

applicable exclusion.

      Plaintiff's focus on the purported absence of a virus exclusion misses the mark for an

additional reason: the Policy *does* contain an exclusion for loss or damage caused by the

"[c]ontamination by other than 'pollutants,'" which encompasses loss or damage caused by

---

[5] *Black's Law Dictionary*  defines "expense" as "expenditure of money, time, labor, or resources to accomplish a result"—not revenue forgone. *Expense*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

viruses. Policy, Ex. A at 25.[6] Indeed, Plaintiff effectively concedes that its claims fall within this exclusion. In arguing that "a virus can constitute physical damage to property," Plaintiff relies on an Insurance Services Office ("ISO")[7] statement referring to "disease-causing viral or bacterial *contamination*" resulting in potential claims for the "cost of *decontamination*" of property that has "arguably become *contaminated* (often temporarily) by such viruses and bacteria." SAC ¶¶ 66–67 (emphases added). While Continental has no duty to prove the applicability of an exclusion until Plaintiff satisfies its initial burden of proving that its alleged losses fall within the scope of coverage, the Policy reflects a clear intent not to provide coverage for exactly the sort of contamination claims that Plaintiff now asserts. *Advantage Homebuilding, LLC*, 470 F.3d at 1008 (noting that "the insured has the burden of proof to establish the nature and extent of any loss" and that the claimed loss falls within the scope of the insurance policy and "[a]ssuming the insured can satisfy this burden, the insurer then has the burden of proving that any exclusionary clauses within the policy apply to preclude coverage"). But the Court need not address the scope of that or other applicable exclusions on this motion because Plaintiff has failed to allege a loss that falls within any grant of coverage under the Policy.

D.    <u>Continental Does Not Consent to Personal Jurisdiction of Putative Class Members that Are Not Residents of Kansas.</u>

In an abundance of caution, Continental objects to and challenges the Court's jurisdiction over the claims of class members that are not residents of Kansas. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017). Moving to dismiss the putative class

---

[6] For the sake of context, the Policy also has a pollution exclusion, so the contamination exclusion avoids overlap with that exclusion by specifically applying to contamination by "other than" pollutants. In short, the Policy does not cover claims for contamination, whether caused by pollutants, viruses, or anything else.

[7] ISO is an insurance industry organization that provides insurers with proposed language that can be used for various terms and conditions in insurance policies. *See* SAC ¶ 66.

members' claims is premature at this stage because those putative class members are not yet parties to the litigation. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250–51 (5th Cir. 2020) (holding class certification made personal jurisdiction argument available and thus failure to raise defense earlier does not constitute waiver of defense); *Molock* v. *Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 296–98 (D.C. Cir. 2020) (holding motion to dismiss based on personal jurisdiction is premature before class certification because putative class members are not parties before the court). However, a necessary corollary of these holdings is that failing to seek dismissal of the claims of absent members of a putative class does not constitute waiver of a personal jurisdiction defense with respect to those claims. *See Cruson*, 954 F.3d at 250–51. Nevertheless, because Continental has not found authority in this jurisdiction directly on point on this issue, Continental respectfully objects to the Court's exercise of jurisdiction over the claims of nonresident putative class members, and reserves its right to further address this issue at the appropriate time if the Complaint survives this motion to dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Class Action Complaint should be dismissed with prejudice.

Dated: August 14, 2020                    Respectfully submitted,

                                          HUSCH BLACKWELL LLP


                                          /s/ *Taylor Concannon Hausmann*
                                          Tyler J. Scott              KS #24940
                                          Taylor Concannon Hausmann KS #26668
                                          4801 Main Street, Suite 1000
                                          Kansas City, Missouri  64112
                                          Telephone: (816) 983-8000
                                          Fax: (816) 983-8080
                                          tyler.scott@huschblackwell.com
                                          taylor.hausmann@huschblackwell.com

                                          Joshua Grabel
                                          2415 E. Camelback Road, Suite 420
                                          Phoenix, Arizona  85016
                                          Telephone:  (480) 824-7883
                                          Facsimile:  (480) 824-7905
                                          josh.grabel@huschblackwell.com

                                          David Timmins
                                          1900 N. Pearl Street, Suite 1800
                                          Dallas, Texas  75201-2995
                                          Telephone:  (214) 999-6185
                                          Facsimile:  (214) 999-6170
                                          david.timmins@huschblackwell.com

                                          ***Attorneys for Defendant Continental
                                          Casualty Company***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 14, 2020, I filed the foregoing electronically through the CM/ECF system, which caused all attorneys of record for Plaintiff who have appeared in this action to be served by electronic means, as reflected in the Notice of Electronic Filing.

<u>/s/ *Taylor Concannon Hausmann*</u>
Taylor Concannon Hausmann